UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH A. HOFER, individually and | ) | |
| on behalf of others similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 1865 CDP |
| | ) | |
| SYNCHRONY BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Joseph A. Hofer filed this putative class action complaint against

defendant Synchrony Bank under the Telephone Consumer Protection Act

(TCPA), 47 U.S.C. § 227 *et seq.*  Synchrony has filed a motion to stay the

proceedings in this case based on the primary jurisdiction doctrine and on this

court's inherent authority to manage its docket.  The Federal Communications

Commission twice has ruled that a predictive telephonic dialing system that

operates from a list of numbers qualifies as an "automatic telephone dialing

system" under the TCPA.  There is no need, then, to stay this case pending

resolution of that question by the FCC.  The second issue – whether a call made to

the "wrong party" can qualify for the "called party" consent exception – does not

require a stay pending adjudication by the FCC, because other courts have

construed the statute at issue to answer the question and because no ruling by the FCC is imminent. Finally, this court declines to invoke its inherent authority to stay the case. The motion will be denied.

## Background

Joseph Hofer alleges that Synchrony Bank called his cellular telephone in an attempt to collect on credit card debt purportedly owed by his deceased father. Hofer informed Synchrony that the phone number was not his father's and that he had nothing to do with the debt. Hofer also requested that the calls cease; however, he continued receiving calls from Synchrony. Hofer asserts that the calls were made using equipment with the present capacity to dial telephone numbers without human intervention; the technology also has the capacity to store or produce numbers to be called using a random or sequential number generator or a list of numbers.

Hofer alleges it was Synchrony's practice to obtain telephone numbers from credit reports and other sources independent from the persons being called. Synchrony would then compile lists of these telephone numbers, which would be loaded into an autodialer or predictive dialer. Synchrony would then call the numbers without first obtaining consent from the called party. Synchrony contends that the autodialer does not have the present capability of generating sequential or random numbers.

Hofer brings this TCPA claim[1] on behalf of a class whose cellular telephone number was called using a predictive dialer and whose telephone number was obtained from a source other than the called party. He alleges a subclass of persons, to which he belongs, consisting of those persons who were called after requesting that the calls cease.

Synchrony has filed a motion to stay this matter pending decisions by the Federal Communications Commission on two issues in several petitions that it claims are both before the FCC and dispositive of the issues now before this court. Synchrony relies on the doctrine of primary jurisdiction in support of its motion. Synchrony also argues in the alternative that this court should exercise its inherent authority to stay this case in order to avoid burdening its own docket and to ensure fairness to the parties.

The issues that Synchrony states are before the FCC are:

---

[1] The TCPA, 47 U.S.C. § 227(b)(1) provides:
    It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
    . . . .
    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

(1) whether the use of the term "capacity" within the definition of "Automatic telephone dialing system"[2] requires the *current* capacity to store or produce randomly or sequentially generated numbers; and

(2) whether the defense of "prior express consent" of a "called party" under the TCPA attaches to the intended recipient or to the actual recipient of the complained-of telephone call.

## Discussion

Synchrony invokes the primary jurisdiction doctrine in support of its motion to stay. "Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (internal quotation marks and citation omitted).

There is no fixed formula to determine the applicability of the doctrine, but rather it depends on "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." *Access Telecomms.*, 137 F.3d at 608. Deferral to an agency determination is

---

[2] "Automatic telephone dialing system" is defined to mean "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1).

appropriate for (1) "the promotion of consistency and uniformity within the areas of regulation, and (2) "the use of agency expertise in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." *Alpharma*, 411 F.3d at 938 (internal citation omitted). The doctrine "is to be invoked sparingly, as it often results in added expense and delay." *Id.* at 938 (internal quotation marks and citation omitted).

    1.  <u>The Definition of Automatic Telephone Dialing System</u>

      The first factor analyzed by the Eighth Circuit is whether deferral to the FCC would promote consistency and uniformity in this area of regulation. The FCC has already considered the first question proffered by Synchrony at least twice. *See Prater v. Medicredit Inc.*, 46 F. Supp. 3d 1038, 1042 (E.D. Mo. 2014) (citing *Swope v. Credit Mgmt., L.P.*, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013)); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,090–93 (July 3, 2003) (declining to exclude from the TCPA dialers that operate from lists of numbers); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566–67 (Jan. 4, 2008) (rejecting argument that dialer meets definition "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from telephone lists"). Both times, it has held that predictive dialers are considered automatic telephone

dialing systems subject to the TCPA because of their ability to dial stored numbers automatically. The interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC that have been consistently applied by the courts, rather than postponing this case for an indefinite amount of time because the possibility that the FCC may decide to reconsider its past position.

Further, any reconsideration by the FCC regarding its interpretation of these provisions of the TCPA would likely only be applied prospectively. *See Prater*, 45 F. Supp. 3d at 1042; *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 732 (D.C. Cir. 1992) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Contrary to Synchrony's arguments, the existing rule is that automatic telephone dialers using stored lists of numbers, rather than random or sequential number generators, do qualify as automatic telephone dialing systems. Synchrony's desired interpretation on this point would counteract controlling precedent and could only be applied prospectively. *See Farmers Tel. Co., Inc. v. F.C.C.*, 184 F.3d 1241, 1250 (10th Cir. 1999). Because plaintiff is seeking damages for past conduct, any change by the FCC is irrelevant to the question of whether defendant's conduct violated the TCPA at the time of its actions, as it would only apply to future conduct. Therefore, the interests of consistency and uniformity do not weigh in favor of staying this case.

## 2. The Definition of Called Party

As with the definition of automatic telephone dialing system, this court has previously rejected the second argument regarding "called party" as a reason for granting a motion to stay in favor of a determination by the FCC. *See, e.g.*, *Prater*, 45 F. Supp. at 1040, 1043 (rejecting as basis for stay pending FCC question of whether "called party . . . attaches to the cellular phone number or the actual recipient").[3] Although it cites several additional cases from district courts outside the Eighth Circuit,[4] Synchrony provides no basis for abandoning this court's own precedent. Moreover, at least one of the cases cited by Synchrony has not been followed within its own district. *See, e.g.*, *Molnar v. NCO Fin. Sys., Inc.*, No. 13-CV-00131-BAS JLB, 2015 WL 1906346, at *6 (S.D. Cal. Apr. 20, 2015)

---

[3] *Prater* specifically rejected three of the cases relied upon by *Synchrony* in this case. *See id.* at 1043 (noting that this court is obligated to follow Eighth Circuit precedent).

[4] See *Gensel v. Performant Technologies, Inc.*, No. 13-C-1196, 2015 WL 402840, at *2–3 (E.D. Wis. Jan. 28, 2015) (not followed by W.D. Wis.); *Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-00201-KD, 2014 WL 4662512, at *3 (S.D. Ala. Sept. 19, 2014); *Wahl v. Stellar Recovery, Inc.*, No. 14-CV-6002-FPG, 2014 WL 4678043, at *1–2 (W.D.N.Y. Sept. 18, 2014); *Lee v. loanDepot.com, LLC*, No. 14-1084-MLB, 2014 WL 4145504, at *2 (D. Kan. Aug. 20, 2014); *Gusman v. Comcast Corp.*, No.13CV1049–GPC, 2014 WL 2115472, at *1–3, 5 (S.D. Cal., May 21, 2014) (not followed by *Prather*); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624-JTM, 2014 WL 1930885, at *3 (D. Kan. May 14, 2014); *Barrera v. Comcast Holdings Corp.*, No. 14–cv–00343–TEH, 2014 WL 1942829, at *2–3 (N.D. Cal. May 12, 2014) (not followed by *Prather*); *Matlock v. United Healthcare Servs., Inc.*, No. 2:13–cv–02206–MCE–EF, 2014 WL 1155541, at *1–2 (E.D. Cal. Mar. 20, 2014); *Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765 BHS, 2014 WL 670639, at *1 (W.D. Wash. Feb. 20, 2014); *Mendoza v. UnitedHealth Group Inc.*, No. C 13-1553 PJH, 2014 WL 722031, at *1–2 (N.D. Cal. Jan. 6, 2014).

(declining to follow *Gusman*, 2014 WL 2115472, in part because no FCC clarification had issued in the intervening fourteen months).

Synchrony argues that this case requires the court in the first instance to determine what "called party" means under the TCPA, because "called party" is part of the proposed class definition. However, "called party" is referenced within the TCPA as an affirmative defense. *See Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *2 (E.D. Mo. Feb. 19, 2013). The definition of called party does not stand as a barrier to proceeding through the class certification stage of this action. Nor does the particular subject matter extend beyond the conventional experience of judges, who frequently are called to construe regulations. Although the FCC has been delegated the task of interpreting and implementing the TCPA's provisions, *see Swope*, 2014 WL 607830 at *5, at least one Court of Appeals has already addressed this very issue and held that the "called party" exception in § 227(b)(1) requires the consent of the "person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012).

While a stay of this matter pending direction by the FCC might promote consistency and uniformity within the regulated field or otherwise clarify existing law, Synchrony has not provided any reason to believe that a decision by the FCC on this issue is forthcoming. At least one of the petitions cited by Synchrony has

been pending before the FCC since January 2014. *See* ECF No. 15-6.

Additionally, the *Soppet* decision has been the law of the Seventh Circuit since

May 2012, *see generally* 679 F.3d 637, and that decision has not been addressed by

the FCC. It appears that any ruling by the FCC would come only after a lengthy

delay. Such a delay would prejudice Hofer as well as potential class members. *Cf.*

*Trainor v. Citibank, Nat'l Ass'n*, No. CIV. 14-62 PAM/JSM, 2014 WL 2574527, at

*2 (D. Minn. June 9, 2014) (noting that petition had been before the FCC for more

than four years).

Synchrony argues that because the FCC would be interpreting existing

statutes, the FCC's rulings could provide retroactive relief because it would only

be interpreting existing law and not engaging in new rulemaking. *Compare Am.*

*Tel. & Tel. Co. v. F.C.C.*, 978 F.2d 727, 732 (D.C. Cir. 1992) (holding rulemaking

is prospective) *with AT&T Commc'ns Sys. v. Pac. Bell*, 203 F.3d 1183, 1187 (9th

Cir. 2000) (holding interpretation of existing statute may be applied retroactively).

There are deeply ingrained principles against applying retroactive laws, *Landgraf*

*v. USI Film Prods.*, 511 U.S. 244, 267-69 (1994), and the tests for retroactivity are

often complex. *See id.* at 268-69. Though Synchrony may be correct on this point,

Synchrony has not established that the circumstances of this case require a stay.

District Courts have been instructed that a stay should be invoked sparingly.

*Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005). Given the

delay and expenses inherent to any stay, and given the dim prospect for any timely decision by the FCC, I will not stay this case.

I also decline to invoke this court's inherent authority to grant a stay. Even if some judicial economy could be obtained through delaying until the FCC's ruling on the definition of "called party," Hofer has alleged that he was called repeatedly after informing Synchrony that he was not the debtor, and that claim would not be affected by an FCC decision. Hofer has also alleged a subclass of individuals who likewise were called after informing the caller that they were a wrong party. As the FCC's potential ruling does not appear to present even the possibility of ending the litigation, I will allow the case to proceed.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Synchrony Bank to stay action [#14] is denied.

_Catherine D. Perry_
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2015.